**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Patricia Pidcock,** | ) | CASE NO. 12 CV 284 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| **Community Health Partners Regional Medical Center,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant's Motion to Dismiss and in the alternative for Summary Judgment (Doc. 4) and Plaintiff's Motion to Remand (Doc. 8). For the reasons stated below, plaintiff's motion to remand is granted.

**Background facts**

On January 19, 2012, Plaintiff, Patricia Pidcock (an Ohio resident) filed the complaint in this case in the Lorain County Court of Common Pleas against Community Health Partners Regional Medical Center ("CHP") (an Ohio corporation) alleging the following facts. Plaintiff is a registered nurse who was employed by CHP as a Database Coordinator from

1

September 4, 2006 until October 4, 2010. Plaintiff had specialized training and knowledge in the field of data collection/entry, particularly with regard to numerous registries associated with the American College of Cardiology ("ACC"). Plaintiff was responsible for "collecting and submitting data on a quarterly basis to meet Joint Commission, state and federal." The "[s]ubmission of data in a timely manner is imperative to CHP, particularly data regarding 'the metrics,' as that data impacts insurance and Medicare/Medicaid reimbursements rendered to the hospital." (Complt., ¶¶ 6, 7.)

CHP failed to provide the resources necessary for plaintiff to complete her job in a reasonable manner and pressured plaintiff to submit data in a timely fashion, incomplete or not, so that the hospital would be eligible for insurance reimbursements. In order to fulfill CHP contract obligations and obtain reimbursements, it was necessary for CHP to provide the ACC with a full year's report by March 31, 2010. (*Id.*, ¶ 10.) "After reviewing certain CHP data and receiving reports from the ACC containing national comparisons, it became clear that there were irregularities in certain procedures being performed by cardiologists associated with the CHP Cardiac Catheterization Laboratory ('Cath Lab')." (*Id.* at ¶ 11.) Plaintiff discussed these irregularities with her boss and the chief of cardiology at CHP, who "requested that she run a report on every CHP cardiologist for the preceding quarterly period." (*Id.* at ¶ 12.) Plaintiff "complied with the request for individual reports and presented . . . unfavorable news regarding the irregularities to the chief of cardiology at the beginning of a Cardiology quality assurance meeting on September 24, 2010." (*Id.* at ¶ 13.) "The irregularities presented potentially indicated Medicaid and/or Medicare fraud." (*Id.* at ¶ 14.) Plaintiff also presented reports of data from the prior year at the September 24, 2010

meeting. Plaintiff indicated a lack of confidence in the data "[d]ue to the outdated software which precluded data from properly importing." (*Id.* at ¶ 15.) After plaintiff indicated an unwillingness to stand behind the data (which the complaint alleges potentially reflected fraud), plaintiff was screamed at for submitting incomplete and imperfect data and her employment was terminated ten days later, on October 4, 2010, for allegedly "falsifying" data. (*Id.* at ¶¶ 16,17.)

Plaintiff's complaint set forth the following causes of action: (1) "whistleblower discrimination" under Section 4113.52 of the Ohio Revised Code; (2) termination of employment in violation of Ohio public policy; (3) breach of a collective bargaining agreement (CBA) that plaintiff and CHP "purportedly entered into"; and (4) intentional infliction of emotional distress.

CHP removed the action to this Court on February 6, 2012, on the ground that "[p]laintiff's claim based on an alleged breach of a collective bargaining agreement arises under 29 U.S.C. § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a)" (LMRA). (Def. Notice of Removal, ¶ 5.) CHP filed its motion to dismiss or in the alternative for summary judgment on February 16, 2012, arguing that plaintiff's whistleblower and breach of collective bargaining agreement claims are untimely, the breach of collective bargaining agreement claim fails to allege a mandatory element that the union breached its duty of fair representation, and plaintiff's claim of intentional infliction of emotional distress fails to state a claim under Fed. R. Civ. 12(b)(6).

Plaintiff filed an amended complaint on March 7, 2012 (Doc. 7), changing her claims for relief so as to eliminate her claim for breach of the CBA. Plaintiff's amended complaint

3

alleges the following three state law claims: (1) termination of employment in violation of Ohio public policy; (2) intentional infliction of emotional distress; and (3) failure to pay overtime wages in accordance with Ohio law. (Am. Complt.) Plaintiff filed her motion to remand the case to state court the same day she filed her amended complaint.

**Discussion**

In that the Court must first assess its subject matter jurisdiction, plaintiff's motion to remand will be addressed first.[1]

**Standard of Review**

A civil action is removable from state to federal court if the federal court has "original jurisdiction" over the action. 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1331, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." As noted above, CHP removed this case to federal court because plaintiff's alleged cause of action for breach of a collective bargaining agreement constituted a claim arising under and preempted by the LMRA.

Plaintiff argues the action should be remanded because CHP "failed to meet its burden of proving that the elements of jurisdiction are satisfied." Plaintiff argues that CHP did not adequately demonstrate that plaintiff is covered by the CBA and asserts that "the sole basis for . . . federal jurisdiction, the existence of the a collective bargaining agreement, is no longer relevant to the case due to the filing of [plaintiff's] First Amended Complaint." (Pltf. Mot. at 1.) Plaintiff argues that the CBA is not applicable to the state law claims alleged in her

---

[1] Furthermore, in light of the fact that an amended complaint has been filed, CHP's motion to dismiss or in the alternative for summary judgment directed to plaintiff's original complaint is technically moot.

4

amended complaint.[2]

CHP argues that while a defendant seeking to remove a case to federal court has the burden of establishing federal jurisdiction, federal jurisdiction is determined on the basis of the complaint in the record at the time of removal to federal court. CHP argues that plaintiff's original complaint alleged a claim for breach of a collective bargaining agreement arising under the LMRA. *See* CHP Opp. at 2, citing *Mencer v. Kraft Foods Global, Inc.*, 695 F. Supp.2d 667, 672 (S.D. Ohio 2010). In addition, CHP argues that an amended complaint by the plaintiff eliminating the federal claim giving rise to federal jurisdiction does not "automatically" defeat federal jurisdiction over remaining state law claims. *Id.* Rather, where the federal claims alleged in a lawsuit are eliminated through the filing of an amended complaint, the district court has discretion to exercise or decline supplemental jurisdiction over remaining state law claims. *See Packard v. Farmers Ins. Co. of Columbus, Inc.*, 423 Fed. Appx. 580, 583-84 (6th Cir. 2011). *See also Gamel v. City of Cincinnati*, 625 F.3d 949 (6th Cir. 2010) (upholding district court's decision to decline to exercise supplemental jurisdiction over state law claims in a removed case where the plaintiffs filed an amended complaint after removal omitting federal claims).[3]

---

[2] Plaintiff also argues that she was not subject to the CBA in any case and that she originally alleged a claim for breach of the CBA only because she anticipated that CHP "would argue [the CBA] as an affirmative defense." (Pltf. Rep. at 2.)

[3] 28 U.S.C. § 1367(a) provides:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that

CHP's argument is persuasive that this action was properly removed under 28 U.S.C. § 1441(a) because federal jurisdiction existed over the case at the time of removal.  As *Mencer* held, a claim alleging breach of a collective bargaining agreement constitutes a federal claim arising under the LMRA.  *See Mencer*, 695 F. Supp. 2d at 671.

However, while CHP's argument is persuasive that the case was properly removed and that plaintiff's amendment of her complaint does not automatically divest the Court of jurisdiction over the state law claims alleged in plaintiff's amended complaint, the Court nonetheless declines to exercise supplemental jurisdiction over the state law claims currently alleged in the case.

In determining whether to retain jurisdiction over state law claims, federal courts "balance the values of judicial economy, convenience to the parties, fairness, and comity to state courts." *Packard*, 423 Fed. Appx. at 584.  "This includes the interest in not needlessly deciding state law issues." *Id.*  A district court may also consider whether the plaintiff has engaged in any manipulative tactics.  "If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account" in determining whether the balance of factors supports a remand of the state law claims.  *Gamel*, 625 F.3d at 952.  Ordinarily, however, when all of the federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims or remanding them to state

---

> they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

court if the action was removed.  *Id*.

"There are . . . circumstances where a district court should retain supplemental jurisdiction even if all of the underlying federal claims have been dismissed."  *Id*.  For example, in *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195 (6th Cir. 2004), the court found that the following factors weighed in favor of retaining supplemental jurisdiction over state law claims: (1) plaintiff had engaged in forum manipulation by deciding to dismiss his federal law claims only after the case had been on the court's docket for 11 months; (2) defendants' summary judgment motions were ripe for decision; and (3) the parties had completed discovery.  *Harper*, 392 F.3d at 211-12.  Moreover, the district court was "familiar with the facts of the case and already had invested significant time in the litigation."  *Id*.

Here, in contrast, the factors to be considered do not weigh in favor of exercising supplemental jurisdiction.  Unlike in *Harper*, this case is at the pleadings stage, there have been no proceedings conducted to date in federal court, and this Court has not invested significant time or resources in the litigation.  Therefore, the interest of judicial economy does not weigh in favor of exercising supplemental jurisdiction; whereas, the interest of comity and deference to state courts strongly counsels that plaintiff's state law claims proceed in state court.  Even if the plaintiff attempted to manipulate the forum by eliminating her claim for breach of the CBA after the action was removed, this sole factor does not outweigh the interest in avoiding unnecessary resolution of purely state law claims.  *See, e,g, Gamel*, 625 F.3d at 949 ("Ultimately, the district court found that the only factor that weighed in favor of exercising supplemental jurisdiction was the retirees' forum manipulation, but decided that this factor alone was insufficient to warrant retaining jurisdiction over state-law claims.").

There is no suggestion that this forum is more convenient or fair for the parties than the state court.

In sum, the Court finds (as in *Packard* and *Gamel*) that the balance of factors weighs in favor of declining to exercise supplemental jurisdiction. Exercising supplemental jurisdiction in this case would not foster judicial economy and would result in needlessly resolving issues of state law.

**Conclusion**

Accordingly, for the reasons stated above, the Court declines to exercise supplemental jurisdiction and grants plaintiff's motion to remand the case to state court on the basis that an exercise of supplemental jurisdiction is not appropriate.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/19/12